UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREA G.,

                    Plaintiff,

          v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                    Defendant.

CASE NO. C17-6058-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

          Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

          Plaintiff was born on XXXX, 1987.[1] She has her GED and a trade school degree in medical assisting, and previously worked as a customer service representative, receptionist, home attendant, and childcare attendant. (AR 161, 209, 238-39, 357.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

Plaintiff protectively filed a DIB application on April 18, 2014, alleging disability beginning April 17, 2014. (AR 252, 339.) Her date last insured for DIB is December 31, 2017. The applications were denied initially and on reconsideration.

On December 15, 2016, ALJ Marilyn Mauer held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 205-51.) On May 13, 2016, the ALJ issued a decision finding plaintiff not disabled. (AR 149-63.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on October 19, 2017 (AR 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's morbid obesity, sleep apnea, anxiety, depression, and asthma. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform

a range of light work, with the following limitations: lift or carry twenty pounds occasionally and ten pounds frequently; no limits on ability to sit, stand, or walk; balance without limitation; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, stoop, crouch, crawl, and kneel; avoid concentrated exposure to hazards such as unprotected heights and large moving equipment and to inhaled irritants; can understand, remember, and carry out simple instructions to complete tasks that focus on objects, rather than people, in a setting where performance is not on a strict production pace, but allows for some variance in concentration so long as overall performance is within an acceptable range; should not have public contact or teamwork assignments; and must have reasonable access to a lavatory, so should not work outdoors or in a similarly isolated setting. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a small products assembler, mail clerk, or photocopy machine operator and a reduced number of those same jobs if she required the ability to alternate twenty minutes standing with twenty minutes sitting. The ALJ also found that, if further limited to standing and walking a maximum of two hours in an eight-hour workday, plaintiff could perform the sedentary jobs of final assembler, document preparer, and electronic touch up screener.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d

1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error in the ALJ's consideration of medical evidence and opinions, her symptom testimony, lay testimony, and in the RFC assessment and decision at step five. She argues evidence submitted to the Appeals Council supports reversal, and requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Evidence/Opinions</u>

Plaintiff argues the ALJ improperly rejected the opinion of consultative examining psychologist Dr. Terilee Wingate and a statement from Juliana Evans, her mental health counselor. She contends other medical evidence in the record is consistent with her testimony, and that the ALJ gave too much weight to the opinions of non-examining State agency doctors. For the reasons set forth below, the Court finds no error.

A.      <u>Dr. Terilee Wingate and Non-Examining Psychologists</u>

In a July 2014 examination, Dr. Wingate found plaintiff able to understand, remember, and learn simple and some complex tasks, with difficulty sustaining attention to tasks throughout a day or weekly work schedule due to depressed mood, low energy, and anxiety, poor stress tolerance and worries she will make a mistake, but sufficient judgment to avoid hazards and make work

decisions. (AR 547.) Plaintiff could accept direction from a supervisor and interact with a few co-workers, but would likely find working with the public overwhelming. She is fully capable of handling funds. Dr. Wingate assessed a current GAF of 50, reflecting "serious symptoms" or "any serious impairment in social, occupational, or school functioning", and a highest GAF in the past year of 60, reflecting moderate symptoms or difficulties in functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR).

The ALJ accorded the GAF score of 50 lesser weight because it lacked probative value and did not further the functional analysis. (AR 158-59.) She noted GAF scores are an attempt to rate symptoms *or* functioning, that it was not evident what Dr. Wingate was rating, and that, because she did not fully accept plaintiff's symptom testimony, a score based on symptoms was of little value to the analysis. The ALJ also noted that the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's (SSA)] mental disorders listings." 65 Fed. Reg. 50,746, 50,765-766 (Aug. 21, 2000).[2]

The ALJ further stated Dr. Wingate is a medical clinician whose opinions were consistent with the record, including direct observations of plaintiff during the examination, and with the conclusions of other medical clinicians. (AR 159.) Dr. Wingate's opinion accounted for plaintiff's subjective complaints. Plaintiff performed well on the mental status examination (MSE), indicating she would be capable of performing simple, routine tasks. The opinion was consistent with plaintiff's treatment history, which primarily involved medication management. The opinion was, moreover, consistent with plaintiff's presentation throughout the record as pleasant and

---

[2] The most recent version of the DSM does not include a GAF rating for assessment of mental disorders. DSM-V at 16-17 (5th ed. 2013). While the SSA continues to receive and consider GAF scores from acceptable medical sources as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066").

cooperative.  The ALJ therefore gave Dr. Wingate's opinion significant weight.  The ALJ added that, while Dr. Wingate noted plaintiff would have difficulty with sustained work performance, she did not indicate it would be impossible to sustain.  The ALJ found Dr. Wingate's opinion supported and consistent with the RFC.

The ALJ accorded great weight to the opinions of non-examining psychologists Drs. John Robinson and Christmas Covell, rendered in August 2014 and November 2014 respectively.  (AR 159-60, 261-63, 276-78.)  Dr. Robinson opined plaintiff could perform simple tasks, maintain attention and concentration for extended periods, maintain a schedule and regular attendance and complete a normal workweek, work in proximity, but not in collaboration with co-workers and could accept instructions from supervisors, could not work in jobs requiring even occasional interaction with the general public, could adapt to infrequent changes, and was aware enough to avoid common workplace hazards.  (AR 261-63.)  Dr. Covell generally agreed with that assessment, but opined plaintiff could understand and recall very simple, short instructions and could tolerate infrequent, brief, superficial interaction with the general public.  (AR 160, 276-67.)  The ALJ found the opinions of Drs. Robinson and Covell consistent with the opinion of Dr. Wingate, which showed some limited judgment, but generally normal mental functioning, and consistent with their own review of available medical evidence, which showed complaints of anxiety and depression, but generally normal psychological examinations.  (AR 159-60.)  She stated no treating or examining clinician opined plaintiff was more limited than described by Dr. Robinson or Dr. Covell.

Plaintiff avers error in the ALJ's failure to include in the RFC Dr. Wingate's opinion plaintiff would have difficulty sustaining attention to tasks, has poor stress tolerance and worries she will make a mistake, and is limited to interacting with a few co-workers.  She denies the ALJ's

clarification as to sustained work performance served as a legitimate reason to reject any part of Dr. Wingate's opinion because the SSA does not require claimants to prove sustaining work is impossible. Plaintiff rejects the ALJ's finding of consistency between the opinions of Drs. Wingate, Robinson, and Covell. She further criticizes the ALJ's reliance on the opinions of Drs. Robinson and Covell given that they did not review any evidence beyond November 2014 and failed to account for her testimony as to her symptoms and limitations.

To the extent the record could be said to contain contradictory opinion evidence, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence, for rejecting a doctor's opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Also, as an examining psychologist, the opinion of Dr. Wingate was, as a general matter, entitled to more weight than the opinions of the non-examining psychologists. *Id*. at 830. However, non-examining State agency medical and psychological consultants are highly qualified and experts in the evaluation of Social Security disability claims and, while not binding, their opinions must be considered. 20 C.F.R. § 404.1513a(b)(1). Also, while their opinions would not alone justify rejecting the opinion of an examining or treating doctor, *Lester*, 81 F.3d at 831, their findings can amount to substantial evidence so long as supported by other evidence in the record, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The ALJ here properly considered the medical opinion evidence addressing plaintiff's mental functioning and incorporated that evidence into the RFC. The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner." Social Security Ruling (SSR) 96-5P. *Accord* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015). An RFC finding need not directly correspond to a

specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). An ALJ further need not provide a reason for rejecting a medical opinion where the ALJ incorporates the opinion into the RFC. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). The ALJ may incorporate medical opinions by assessing RFC limitations entirely consistent with, but not identical to limitations assessed in the opinion. *Id.* at 1222-23.

The ALJ rationally found consistency in the psychologists' opinions. As found by the ALJ, Dr. Wingate did not opine plaintiff was unable to sustain work. The ALJ accounted for Dr. Wingate's opinion as a whole, as well as those of Drs. Robinson and Covell, by assessing a consistent RFC, with limitations to simple instructions to complete tasks focusing on objects, rather than people, in a setting where performance is not on a strict production pace and allows for some variance in concentration so long as overall work performance is within an acceptable range, and precluding public contact or teamwork assignments. (AR 154.) Plaintiff's alternative interpretation of the medical opinions and other evidence in the record does not suffice to demonstrate error. *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (court may not substitute its judgment for that of the ALJ when evidence reasonably supports either confirming or reversing the ALJ's decision).

Nor did the ALJ otherwise err in relation to Drs. Robinson and Covell. As the Commissioner observes, State agency review precedes review by the ALJ, necessarily providing for a lapse in time between the State agency opinions and the subsequent ALJ hearing and decision. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision

in reliance on it.")  The ALJ was required to and properly considered these opinions, as well as the earlier opinion of Dr. Wingate, and assessed plaintiff's RFC with consideration of the entire medical record.  (*See* AR 155-161.)  The ALJ also, as discussed below, provided sufficient reasons for discounting plaintiff's symptom testimony.   Plaintiff does not demonstrate error in the ALJ's consideration of the medical opinion or other medical evidence of record.

B.     Juliana Evans, MA, LMHC

The record contains a March 15, 2016 statement from plaintiff's counselor.  (AR 809-10.)  Evans treated plaintiff from October 2014 through June 2015, and plaintiff initially presented with depression, mood swings, extreme anxiety, panic attacks, phobias, sleep disturbance, binge eating habits, repetitive thoughts, and repetitive behaviors, such as hair pulling and nail biting.  Plaintiff was prescribed Celexa, Wellbutrin, and Hydroxyine, but taken off Celexa during the time of her counseling.  Her symptoms "were elevated to a point where it was difficult at times for her to leave the house without having a panic attack, which made it difficult for her to function resulting in her taking a leave of absence from her employment."  (AR 809.)  Plaintiff showed some improvement with trichotillomania, but her anxiety and depression symptoms remained, with an increase in those symptoms when she was advised her cancer antigens were elevated.  At the time of her last session, plaintiff's symptoms had not been alleviated and she would benefit from further counseling.  (AR 810.)

The ALJ noted the record did not contain any treatment notes or contemporaneous observations from Evans.  (AR 157.)  The ALJ sent an additional request for records, but the treatment notes did not accompany the statement provided.  The ALJ had little detail as to the basis for Evans' statements, such as contemporaneous observations or clinical assessments.  At hearing, plaintiff testified Evans would not release her notes, but Evans did not provide any confirmation

or explanation of this fact. The absence of details with which to assess the statement made it less persuasive. Because Evans is not an "acceptable medical source," her diagnoses could not establish medically determinable impairments and her statements were overall less persuasive than more qualified sources. The ALJ further found Evans' statement not supported elsewhere in the record. The ALJ noted plaintiff's report of doing well on her medications and normal MSEs. (AR 544-47, 586-606, 676-725.) She found the overall record documented depression and anxiety, but not to the degree described by Evans. For these reasons, the ALJ considered Evans' opinion, but did not find it persuasive.

Applicable Social Security regulations identify Evans as an "other source," rather an "acceptable medical source," such as a licensed psychologist. 20 C.F.R. §§ 404.1502, 404.1513; SSR 06-03p (rescinded effective March 27, 2017).[3] The ALJ may assign less weight to opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and discount such evidence with reasons germane to each source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Plaintiff asserts the ALJ should have subpoenaed the treatment notes from Evans and that her failure to do so violated her duty to fully and fairly develop the record. *See Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]") She denies Evans' status as an "other source" served as a valid reason to reject the opinion. She also counters the ALJ's finding of a lack of support in the record by pointing to an April 2014 observation she was tearful and upset, and a July 2015 observation she was depressed and in moderate distress. (AR 460, 668.) Plaintiff, finally, observes that Evans based her statement

---

[3] New regulations, effective after the ALJ's decision, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," other licensed heath care workers as "medical sources," and other sources of evidence as "nonmedical sources." 20 C.F.R. § 404.1502(a), (d), (e).

on eight months of treatment, and states the ALJ did not cite evidence supporting her conclusion as to a lack of support in the record.

An ALJ does have "an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and quoted sources omitted). However, the "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). *Accord Tonapetyan*, 242 F.3d at 1150.

Plaintiff does not show the ALJ failed to satisfy her duty to develop the record. Regulations require the ALJ to "make every reasonable effort" to help a claimant get medical evidence, which entails making an initial request for evidence and, if not received, "one follow-up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 404.1512(b)(1)(i). The ALJ made the required requests (*see* AR 223-24, 672-75), and there is no indication she found, in the absence of Evans' treatment records, ambiguous evidence or that the record was inadequate to allow for a proper evaluation. The regulations allow for, but do not require the ALJ to issue subpoenas for evidence. § 404.950 (d)(1) ("When it is reasonably necessary for the full presentation of a case, an [ALJ] *may*, on his or her own initiative or at the request of a party, issue subpoenas for . . . documents that are material to an issue at the hearing.") (emphasis added). They also provide claimants the opportunity to request a subpoena. *Id*. at (d)(2) (a party who wishes to subpoena documents must file a written request for the issuance of a subpoena with the ALJ or at an SSA office at least ten days prior to a hearing). The claimant, moreover, bears the ultimate burden to prove disability. § 404.1512(a). The ALJ in this case satisfied her obligations in regard to the record.

The ALJ also appropriately considered the absence of contemporaneous observations or clinical assessments supporting Evans' opinion, and properly discounted the statement upon finding it not supported by other evidence. SSR 06-3p (ALJ may consider degree to which an "other source" presents relevant evidence to support an opinion; while the regulations do not address how to evaluate these opinions, provisions addressing acceptable medical sources provide for consideration of any factors tending to support or contradict a medical opinion and other opinions in the record, and the ALJ is generally required to "consider all of the available evidence in the individual's case record in every case.") (rescinded effective March 27, 2017). *See also* 20 C.F.R. § 404.1527(c)(3)-(4) (the more relevant evidence provided and the more consistent with the record as a whole, the more weight an opinion will be given). Plaintiff offers a different interpretation of the evidence, but the ALJ's interpretation is rational. The ALJ also identified and discussed in detail the evidence supporting her conclusion the record supported a lesser degree of impairment than described by Evans. (AR 155-60.) *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (the court properly reads the ALJ's decision as a whole).

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[4] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony

---

[4] Effective March 28, 2016, the SSA eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. However, this change is not applicable to the March 13, 2016 ALJ decision in this case and the Court continues to cite to relevant case law utilizing the term credibility.

or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence in the record. She provided specific, clear, and convincing reasons in support of that conclusion.

A.    Medical Evidence

While subjective pain testimony cannot be rejected solely due to a lack of full corroboration by objective medical evidence, the medical evidence remains a relevant factor in assessing symptom testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. § 404.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan*, 242 F.3d at 1148.

The ALJ found inconsistency between the medical evidence and plaintiff's allegations. Plaintiff did not endorse any worsening of symptoms throughout the period at issue and denied any changes in her ability to concentrate, sleep, or socialize. (AR 155.) With respect to physical impairments, the ALJ considered, *inter alia*, generally normal examination findings from consultative examining physician Dr. Gary Gaffield, indication of some cyclical recurrence of blood loss related to gastrointestinal issues, but no anemia or required blood transfusions, and an

absence of evidence plaintiff's asthma is not well controlled and normal pulmonary functioning testing. (AR 155, 157-58.) Evidence considered in relation to plaintiff's mental impairments included, *inter alia*, the findings from Dr. Wingate, treatment notes reflecting age appropriate cognitive ability, memory, and emotional stability and mental state within normal limits, and relatively unremarkable MSEs. (AR 156-57.)

Plaintiff argues the ALJ necessarily failed to properly evaluate the medical evidence given the errors in evaluating medical opinions, provided no more than a selective summary of medical evidence, and improperly rejected testimony based solely on an absence of objective medical support. She describes medical evidence in the record as consistent with her testimony.

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ, *Tackett*, 180 F.3d at 1098, and an ALJ's rational interpretation of the evidence must be upheld, *Morgan*, 169 F.3d at 599.

The ALJ here properly assessed the medical opinions and, in assessing symptom testimony, provided a lengthy discussion of significant, probative evidence, explained why that evidence supported her conclusion, and did not rely solely on an absence of fully corroborating objective medical evidence. Again, plaintiff construes the evidence differently. The ALJ's rational interpretation withstands scrutiny and will not be disturbed.

B. <u>Treatment</u>

In evaluating symptom testimony, an ALJ properly considers evidence associated with treatment. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p. An ALJ may consider unexplained or

inadequately explained failure to seek or follow through with treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); improvement with medication, *Morgan*, 169 F.3d at 599-600, or favorable response to conservative treatment, *Tommasetti*, 533 F.3d at 1039-40; and an absence of symptom reporting in treatment, *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006). *See also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.")

The ALJ here considered that treating providers encouraged plaintiff to engage in counseling, and construed the evidence to suggest counseling was not as extensive or consistent as one might expect with anxiety as severe as plaintiff alleged. (AR 155, 157.) She also considered evidence plaintiff was doing well on her depression medication, but still a bit anxious; denied worsening of her asthma symptoms, but used her rescue bronchodilator several times a month; reported doing well on her medications; that the majority of her treatment consisted of medication management; evidence that heightened anxiety was temporary and situational in relation to gynecological conditions that resolved within twelve months; evidence blood loss had not required more than conservative treatment, with the primary recommendation of lifestyle changes; apparently well controlled asthma; and good response to treatment for obstructive sleep apnea. (AR 156-58.)

Plaintiff asserts she continued to experience symptoms and limitations even while taking medication. The ALJ, however, properly considered evidence showing the effectiveness of treatment and rationally construed that evidence to show plaintiff's symptoms were not as limiting as alleged. Nor does plaintiff show the ALJ improperly speculated in finding temporary and situational heightened anxiety symptoms. The ALJ's interpretation is rational, and reflects the

drawing of a reasonable inference from the evidence. *See* SSR 86-8 ("Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence.") Finally, while asserting the ALJ was required to consider her explanation for why she did not obtain additional counseling, plaintiff fails to demonstrate the explanation she provided made the ALJ's consideration of this evidence inappropriate. (*See* AR 231-33 (plaintiff explained she stopped counseling because it was difficult to get ahold of her counselor to make or reschedule appointments and she "wasn't getting very much along the lines of coping skills."; when asked why she had not sought out another counselor, plaintiff stated she was currently seeing a counselor and that it was hard to find someone who takes her insurance)); and SSR 82-59 (failure to follow prescribed treatment may be justifiable where claimant unable to afford); SSR 96-7p (ALJ should not draw inferences from failure to seek or pursue treatment without first considering explanations for failure, including an inability to afford treatment), and SSR 16-3p (ALJ must consider possible reasons for failure to comply with or seek treatment).

C.    Activities

The ALJ found plaintiff's activities not consistent with a finding of disability. (AR 158.) Plaintiff reported handling all household finances, spends time on her computer, plays piano, and has a circle of close friends, and drives three-to-four days a week. This indicated greater cognitive and social functioning than alleged. Plaintiff also noted shopping regularly. The ALJ found inconsistency between the activities and allegations undermined the subjective complaints.

Plaintiff denies inconsistency between her testimony and activities, that the activities meet the threshold for transferable work skills, or that they show she can work. The ALJ, however, reasonably found the activities inconsistent with the degree of impairment alleged. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine testimony where they (1) contradict

the claimant's testimony or (2) meet the threshold for transferable work skills).

D.    Inconsistent Reports

The ALJ considered that plaintiff provided inconsistent reports about why she left work. (AR 158.)  She told Dr. Gaffield she left her last job at the request of her pulmonologist due to respiratory concerns, despite her assertion her asthma was well managed.  (AR 538.)  She reported to Dr. Wingate she was unable to work secondary to a breakdown.  (AR 544.)  On another occasion, she reported missing work due to anxiety and crying related to gynecological conditions.  (AR 460.)  This inconsistency undermined plaintiff's subjective complaints.

Plaintiff denies these "minor and unclear" inconsistencies justify rejecting her testimony. (Dkt. 12 at 9.)  However, a specific, cogent reason for disregarding testimony includes inconsistent statements as to why a claimant left a job. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ properly relied on plaintiff's inconsistent reporting as one among several specific, clear, and convincing reasons for discounting her symptom testimony.

## Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment.  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ can reject lay witness testimony by giving reasons germane to the witness. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996)

Plaintiff's spouse submitted a lay statement.  (AR 394-401.)  As described by the ALJ, the lay witness reported plaintiff is unable to lift more than five pounds, experiences significant anxiety and fatigue, and sleeps a lot.  (AR 158.)  The ALJ found the description of plaintiff's activity much more limited than plaintiff describes.  It did not mention, for example, plaintiff's piano playing, computer time, or her circle of friends.  The statement alleged plaintiff needs

assistance with a stomach binder, which was no longer an issue since her hernia repair. The statement also suggested difficulty concentrating and shopping impulsively, which the ALJ found inconsistent with plaintiff's report she handles all finances. While considering the lay statement in making her overall findings, the ALJ found it not consistent with the overall record or with plaintiff's own statements, which diminished the weight she afforded the statement.

Plaintiff challenges the ALJ's examples of inconsistency. She points to her testimony she played the piano infrequently and only when at her Mom's house, that the lay witness described one of plaintiff's activities as playing a computer game, and indicated friends sometimes came to talk, but that they did not see friends as often as they had in the past. (AR 217-18, 398-99.) Plaintiff also denies she claimed to handle all finances and states that, while she did indicate her ability to pay bills, count change, handle a saving account, and use a checkbook/money orders, she also reported she forgets to pay bills and overdraws her account. (AR 415-16.) Responding to the Commissioner, she observes her reported ability to lift twenty pounds came eight months after the lay witness reported she could lift only five pounds. (AR 219, 394.)

The ALJ provided the germane reasons required to discount the lay testimony, including inconsistency between the degree of impairment described by the lay witness and described elsewhere by plaintiff. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons for discounting lay testimony include inconsistency with medical evidence, evidence of claimant's activities, and claimant's reports). For example, in July 2014, plaintiff reported to Dr. Gaffield that she drives, is able to bathe and dress herself, prepares food, reads, watches TV, works on a computer, takes care of her cats, maintains her home and yard, and enjoys playing the piano, reading, watching television, and interacting with family and friends. (AR 539.) That same month, plaintiff reported to Dr. Wingate that she lives with her partner and their four cats, drives, "handles

the finances" and shops with her partner, shares cooking tasks, spends her day watching TV, reading, napping, and playing on her computer, that she plays piano at her mother's house, tries to swim a couple of times a week with friends, has an "'inner circle' of close and supportive friends," stays in touch with friends on Facebook, and belongs to a "Facebook buy, sell and trade group." (AR 545-46.) The ALJ reasonably construed the description of plaintiff's activities offered by the lay witness in June 2014 as more limited. The witness stated, for example, that plaintiff could only lift five pounds, spent her days watching TV, reading, or watching him play games, only truly prepped and cooked a meal about three times a week, performed household chores but needed help lifting anything above five pounds, did not do yard work, had begun impulse buying, socialized with friends or her Mom a few times a month, but found social situations very stressful and was less outgoing than before, and could walk a few hundred feet at most before needing to rest for five minutes or maybe more. (AR 394-400.)

The ALJ also provided an additional germane reason in finding the lay testimony otherwise inconsistent with the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJ may reject lay testimony based on inconsistency with the medical evidence); *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (same). Plaintiff, accordingly, fails to demonstrate error in the ALJ's consideration of the lay testimony.

### RFC and Step Five Conclusion

Plaintiff avers error in the RFC, VE hypothetical, and the decision at step five as a result of the alleged errors discussed above. This mere restating of arguments does not establish error. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

### Appeals Council Evidence

Plaintiff also requests remand based on evidence submitted to the Appeals Council after

the ALJ's decision.  (AR 8-18, 27-100, 108-45, 169-204.)  She maintains the evidence shows she is more limited than found by the ALJ, undermines the ALJ's conclusions, and supports reversal.

The Appeals Council found an April 2014 record from nurse practitioner Nancy Armstrong and other records dated between October 2015 and May 2016 did not show a reasonable probability of changing the outcome of the decision.  (AR 2.)  It found other records dated after the ALJ's decision, including medical opinions from Dr. Rachelle Langhofer and Dr. Wingate, did not relate to the period at issue and did not affect the ALJ's decision about whether plaintiff was disabled beginning on or before May 13, 2016.

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  This Court must, in other words, "determine whether the ALJ's finding of nondisability was supported by substantial evidence in the entire record – including any new evidence in the administrative record that the Appeals Council considered – not just the evidence before the ALJ."  *Gardner v. Berryhill*, 856 F.3d 652, 656 (9th Cir. 2017).

The evidence dated prior to the ALJ's decision does not undermine her conclusions.  For example, Armstrong, in April 2014, stated plaintiff was in pain and having severe anxiety impairing her ability to think and interact well with others, needed to be off work until evaluated by surgery, but "can work if feels emotionally able to[,]  light duty[,]" with an estimated duration of accommodation of two-to-six months.  (AR 201-02.)  Given the ALJ's finding plaintiff could perform work modified light work, requiring only simple instructions/tasks focusing on objects, not people, not requiring a strict production pace and allowing for variance in concentration, and

not involving public contact or teamwork assignments, as well as the identification of sedentary jobs at step five, substantial evidence support for the ALJ's decision would exist even with consideration of the evidence from Armstrong.

Nor does the evidence dated after the ALJ's May 13, 2016 decision undermine the substantial evidence support for the nondisability determination. That evidence includes, for example, a May 20, 2016 letter from treating provider Dr. Langhofer describing plaintiff's diagnoses and history, the "several relationship, health, and living situation stressors . . . exacerbating her current episode of depression[,]" that she appeared currently low risk for self or other harm, her overall GAF of 50, "reflective of her serious history, functioning in social areas, and her chronic health problems[,]" and that plaintiff had "chronic and severe mental health issues that appear exacerbated by her chronic health issues" and "may additionally qualify for a Pain Disorder – which should be further evaluated by a psychologist who is not her therapist." (AR 145.) On June 10, 2016, Dr. Langhofer completed a medical source statement assessing plaintiff as markedly limited in the ability to complete a normal workday/week and perform at a consistent pace, but otherwise moderately limited or less, and stating plaintiff is "unlikely to be able to work in most job settings without a regular and at least moderate impact pertaining to her mental health." (AR 109-12, 145.) Also, on August 18, 2017, Dr. Wingate assessed plaintiff as markedly impaired in her ability to perform activities within a schedule, maintain regular attendance, and be punctual, and in the ability to complete a normal workday/week. (AR 12-18.)

The fact that evidence post-dates the ALJ's decision reduces its relevance. *See, e.g.*, *Johnson v. Berryhill*, No. 15-35059, 2017 U.S. App. LEXIS 26257 at *4 (9th Cir. Dec. 21, 2017) (substantial evidence supported ALJ's determination where new evidence presented to Appeals Council "post-dates the ALJ's decision and is not relevant because it does not 'relate to the period

on or before the ALJ's decision.'") (citation omitted); *Quesada v. Colvin*, No. 12-55546, 2013 U.S. App. LEXIS 11219 at *4-5 (9th Cir. Jun. 4, 2013) (evidence submitted to Appeals Council "would not have changed the outcome in the case because it post-dated the ALJ's decision and therefore was not relevant.") *See also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (finding medical opinion "all the less persuasive since it was obtained by Appellant only after the ALJ issued an adverse determination.") In particular, Dr. Wingate's report, dated more than a year after the ALJ's decision and differing from the opinion Dr. Wingate offered within the relevant time period, is of minimal relevance to the ALJ's non-disability determination.

The evidence from Dr. Langhofer is much closer to the date of the ALJ's decision. In noting she met with plaintiff on approximately twelve occasions prior to the May 2016 letter, the evidence appears pertinent to the time period considered by the ALJ. However, it does not follow that this evidence would have altered the outcome of the ALJ's decision. Dr. Langhofer's letter reflects her acknowledgement of the impact of situational stressors on plaintiff's mental health and the consideration of factors other than mental health functioning in the GAF score. (AR 145.) She assessed almost entirely mild and moderate functional limitations in the medical source statement, and qualified her opinion to some extent by commenting plaintiff was "unlikely" to work in "most" jobs without regular and "at least moderate impact pertaining to her mental health[.]" (AR 111.) Also, although the ALJ did not consider this report, she did account for Dr. Wingate's prior opinion in the RFC, including her observations as to difficulty sustaining attention to tasks daily or throughout a weekly work schedule, poor stress tolerance, and worries of making a mistake. *Cf. Cramer v. Berryhill*, No. 16-35215, 2017 U.S. App. LEXIS 25210 at *4-5 (9th Cir. Dec. 13, 2017) ("Although the ALJ did not consider the new . . . medical opinion evidence that Cramer would be precluded from work due to an inability handle social interactions, supervision, and agitation, the

ALJ considered similar limitations, and rejected them as inconsistent with Cramer's activities, past work, and volunteer work. The same reasoning applies to discredit the new evidence, and substantial evidence continues to support the ALJ's determination."); *Boyd v. Colvin*, No. 11-36035, 2013 U.S. App. LEXIS 8787 at *3-4 (9th Cir. Apr. 30, 2013) (physician's evaluation submitted to Appeals Council was dated several months after the ALJ's hearing and, while his findings "suggest a potential disability, they [were] at odds with extensive evidence that was before the ALJ.")

Moreover, as with Evans, the record does not include Dr. Langhofer's treatment notes. The new evidence does, however, include other treatment notes dated between August 20, 2015 and March 31, 2017. These records provide additional support for the conclusion the evidence submitted to the Appeals Council does not undermine the ALJ's decision. For example, while reflecting an increase in depressive and anxiety symptoms relating to an April 2016 surgery, the treatment notes show plaintiff was repeatedly found to have normal mental status on examination and that her symptoms improved over time. (*See, e.g.*, AR 115, 122, 131-33, 137-40, 144, 171, 175, 178, 182, 189.) (*See also* AR 183-86 (February 8, 2016: reporting increased symptoms and effect on functioning, but mental status normal on examination and plaintiff felt her chronic anxiety was "pretty well controlled").) By July 2016, plaintiff reported improved anxiety and depression, feeling better and "happier," "able to maintain relationships" and no interference with her activities of daily living, and having some mostly mild symptoms, well controlled on medication. (AR 123, 126-30.) As of March 3, 2017, while struggling with focus and concentration, plaintiff was returning to school and her depression was "getting better." (AR 118-19.) This evidence, considered in conjunction with the other new evidence and the record as a whole, supports affirming the ALJ's decision.

## <u>CONCLUSION</u>

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>27th</u> day of November 2018.

Mary Alice Theiler
United States Magistrate Judge